# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Kelly M.,
                                        Case No. 20-CV-2034 (ECT/JFD)

                  Plaintiff,

v.                                      **REPORT AND RECOMMENDATION**

Kilolo Kijakazi,

                  Defendant.

Pursuant to 42 U.S.C. § 405(g), Plaintiff Kelly M. seeks judicial review of a final decision by the Commissioner of Social Security denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's impairments include coronary artery disease, degenerative disc disease of the lumbar spine, obesity, Duane Syndrome of both eyes, and major depressive disorder. The case is currently before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 24) and Defendant's Motion for Summary Judgment (Dkt. No. 30), which have been referred to the undersigned for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1(a)(3)(D).

In seeking reversal of the Commissioner's final decision and remand to the Social Security Administration ("SSA"), Plaintiff argues the following: (1) the administrative law judge ("ALJ") erred in evaluating the opinions of Dr. Matthew Gahn; (2) the ALJ erred in evaluating the opinion of social worker Theresa Larrabee; and (3) the appointment of former Commissioner Andrew Saul violated the separation-of-powers doctrine, which

1

deprived the ALJ and the Appeals Council of the constitutional authority to adjudicate Plaintiff's claims. For the reasons set forth below, the Court concludes that the ALJ erred in evaluating Dr. Gahn's opinions but not Ms. Larrabee's opinion, and that the ALJ and Appeals Council acted with constitutional authority. Accordingly, the Court recommends that Plaintiff's motion be granted in part and denied in part, the Commissioner's motion be granted in part and denied in part, the Commissioner's final decision be reversed, and the matter be remanded to the SSA for further proceedings consistent with this Report and Recommendation.

## I.      Background

Plaintiff applied for DIB benefits on September 28, 2016, and SSI benefits on October 25, 2016. (Soc. Sec. Admin. R. (hereinafter "R.") 457, 461.)[1] The date of the alleged onset of disability is August 23, 2016. (R. 457, 461.) Plaintiff's last insured date for DIB consideration is December 31, 2017. (R. 471.) For SSI consideration, the relevant time period extends through June 24, 2019, the date of the ALJ's decision. *See* 20 C.F.R. § 416.330; *Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013).

### A.      Relevant Medical Evidence

#### 1.      Mental Conditions

On July 15, 2016, one month before the date of the alleged onset of disability, Plaintiff was admitted to the hospital for a suicide risk assessment on the recommendation

---

[1] The Social Security administrative record is filed at Dkt. Nos. 23 through 23-14. The record is consecutively paginated, and the Court cites to that pagination rather than to docket number and page.

of his social worker, Theresa Larrabee, after he described having intense suicidal thoughts the previous day. (R. 577–78.) Plaintiff described situational stressors of applying for DIB, a girlfriend who had knee surgery, and losing his home. (R. 577.) Plaintiff was calm and cooperative but had a depressed mood and was tearful. (R. 577.) He refused in-patient treatment at a facility unless he was placed on a 72-hour hold, and he was transferred to an in-patient facility against his will the following day. (R. 583–84.) Plaintiff was discharged on July 20, 2016. (R. 675.) He continued to report severe depression (*id.*), but was described as cooperative, pleasant, and "very hopeful." (R. 603). Plaintiff demonstrated no agitation, aggression, or behavioral problems; his concentration was fair; and his memory was intact. (R. 603.)

Plaintiff attended an appointment with Ms. Larrabee on September 29, 2016, and Ms. Larrabee noted that Plaintiff needed more assistance than just therapy and medication management. (R. 675.) She referred him to additional case management services and Adult Rehabilitative Mental Health Services ("ARMHS") for assistance with financial, occupational, disability, life skills, and housing matters. (R. 675, 679.) A mental status examination documented alertness, poor grooming and hygiene, appropriate affect, dysphoric/sad mood, coherent and linear thoughts, normal speech, average intelligence, impaired attention and concentration, intact memory, fair insight, fair judgment, and suicidal ideation. (R. 676.) Ms. Larrabee found Plaintiff to be a moderate danger to himself. (R. 676.) Ms. Larrabee diagnosed Plaintiff with severe persistent depressive disorder with severe anxious distress. (R. 677.) Plaintiff's chronic pain, homelessness, and low income also adversely affected his mood and daily functioning. (R. 677.)

3

In October 2016, Plaintiff told Ms. Larrabee he felt very stressed and hopeless about not knowing where he was going to live. (R. 692.) Two weeks later, he felt overwhelmed about moving into an apartment, was in pain from lifting items during the move, and could not sleep due to racing thoughts and physical pain. (R. 693.) In February 2017, Plaintiff appeared depressed and had no improvement in his mood or use of skills. (R. 924.) He left his apartment only every three days and felt every day like he would be better off dead. (R. 924.) Ms. Larrabee wrote that Plaintiff had "treatment interfering behaviors resulting in him not following through with use of skills to better regulate emotions." (R. 924.)

A few months later, however, in May 2017, Plaintiff told provider Demetrius Bray that he was getting out more in the community, spending time with his brother, and being more social with others. (R. 926.) He also enjoyed reading, found ways to exercise, and lightly cleaned his apartment daily. (R. 926.) But Plaintiff also reported crying for no reason and having emotional breakdowns. (R. 926.)

Plaintiff saw Dr. Tanya Schineller in April 2017 for depression. (R. 920.) Dr. Schineller recorded the objective findings from a psychiatric examination as alert, calm and cooperative, normal speech, fair mood, constricted affect, congruent mood, tangential thoughts, unresponsive to internal stimuli, grossly intact concentration, grossly intact memory, and fair judgment and insight. (R. 921.)

Plaintiff requested a new psychiatry referral in November 2017. (R. 995.) Nurse practitioner Janice Couture-Knuti's objective findings included general health, alertness, no distress, normal mentation, and normal/flat affect. (R. 999.) Plaintiff returned to Ms. Couture-Knuti the following month. The progress note documented a low reported mood,

no other symptoms, and no real thoughts of self-harm. (R. 1002.) The objective findings were essentially the same as the prior month, except Plaintiff's affect was normal/bright. (R. 1005–06.)

Ms. Larrabee completed a Mental Medical Source Statement form on January 17, 2018. (R. 960-63.) She indicated she saw Plaintiff on a biweekly basis from April 1, 2016 to October 31, 2017. (R. 960.) Ms. Larrabee wrote that Plaintiff's diagnosis was persistent depressive disorder and his prognosis was poor. (R. 960.) Per Plaintiff's report, chronic back pain contributed to his mental condition. (R. 960.) Ms. Larrabee wrote that Plaintiff had minimal to no improvement with therapeutic interventions, and he experienced fatigue, loss of pleasure, lack of motivation, hopelessness, motor retardation, feelings of guilt, and negative self-evaluation. (R. 960.) In assessing Plaintiff's ability to sustain certain activities, Ms. Larrabee indicated that he would be extremely limited in sustaining an ordinary routine without special supervision, working in coordination with or proximity to others without being distracted, and tolerating normal stress. (R. 961.) "Extremely limited" means "substantial loss in the ability to function independently, appropriately, and effectively on a sustained basis." (R. 961.) Ms. Larrabee indicated that Plaintiff was "markedly limited" in understanding and remembering very simple and short instructions, as well as detailed instructions; maintaining concentration and attention for more than two hours at a time; making simple work-related decisions; accepting instructions and criticism from supervisors; maintaining appropriate social behavior and following neatness and cleanliness standards; traveling in unfamiliar places and using public transportation; and

setting realistic goals and making independent plans. (R. 961.) In addition, according to Ms. Larrabee, Plaintiff would require unscheduled breaks during the workday. (R. 962.)

Ms. Larrabee also wrote a three-paragraph letter in which she explained that Plaintiff's therapy had ceased due to failure to progress. (R. 958.) She stated that Plaintiff struggled with regulating anxiety and with sleep, fatigue, chronic pain, suicidal ideation, concentration, memory, loss of interest and pleasure, emotion regulation, isolation, loneliness, low self-esteem, decreased appetite, and psychomotor retardation. (R. 958.) According to Ms. Larrabee, Plaintiff felt nervous, irritable, worried, restless, and fearful. (R. 958.) Ms. Larrabee thought Plaintiff would not be able to work competitively. (R. 959.)

Plaintiff had a psychiatric examination in November 2018 and was described as alert and oriented to place, person, and date; his recent and remote memory was grossly intact; his thoughts were linear and goal-directed; his affect was restricted; his speech was normal; and his insight and judgment were good. (R. 1215.) He told provider Aurora Emmons, MS, later that month that his self-care had improved in the past year; he left his apartment to socialize, do puzzles, and watch television in the community room; he visited his brother after Thanksgiving and enjoyed helping his brother with lawn work in the summer; and he drove himself to and from appointments. (R. 1220.)

In January 2019, a psychiatric examination documented alertness and orientation, grossly intact memory, "not good" mood, and unremarkable attention and concentration. (R. 1227.) Plaintiff reported to provider Coryanna Martorelli, MS, NCC, in February 2019 that his depressive symptoms, particularly memory loss and frustration. had increased due to his financial and living situations. (R. 1229.)

6

Plaintiff was admitted to in-patient treatment again on March 10, 2019 on an emergency hold basis. (R. 1169, 1172.) He reported increased depression, poor sleep, not feeling safe with himself, low energy, poor concentration, racing thoughts, mood swings, increased anxiety, and chronic back pain. (R. 1169.) He denied suicidal thoughts or ideation. (R. 1169–70.) Results of a mental status examination by Dr. Mark Tsibulsky included normal speech, constricted affect, depressed mood, focused concentration, goal-directed thoughts, intact associations, normal insight and judgment, and intact memory. (R. 1169.) Dr. Tsibulsky's impression was that Plaintiff suffered from a mood disorder. (R. 1170.) Plaintiff was discharged on March 15, 2019, after he reported that his mood had improved significantly. (R. 1172.) A psychiatric examination later that month was consistent with prior examinations. (R. 1235.)

## 2. Physical Impairment

Although Plaintiff has several physical impairments, his motion for summary judgment focuses on his eye problems and medical evidence from Dr. Gahn. (*See* Pl.'s Mem. Supp. Mot. Summ. J. at 6–8, 9–12, Dkt. No. 26.)

Dr. Gahn wrote a letter to Plaintiff's disability representative on July 27, 2017, concerning Plaintiff's eyes and vision. (R. 957.) Dr. Gahn explained that bilateral Duane Syndrome prevented Plaintiff from moving his right and left eyes outward toward his ear. (R. 957.) Plaintiff also had limited binocular visual skills, which caused "difficulty with extended near work." (R. 957.) In addition, according to Dr. Gahn, Plaintiff could not "view a computer monitor for any length of time without experiencing disabling eyestrain."

(R. 957.) Dr. Gahn wrote that he had examined Plaintiff on September 13, 2013; December 10, 2015; and July 26, 2017.

Dr. Gahn wrote a second letter to Plaintiff's representative on March 27, 2019. (R. 965.) Dr. Gahn opined that the lack of binocular function caused difficulty "sustain[ing] detailed visual tasks at near and far, such as computer work or night driving. His productivity would be poor and unreliable even if he could struggle through the disabling eyestrain. Simply functioning day to day is a challenge with his visual disability." (R. 965.)

## B.   Administrative Proceedings

After Plaintiff's applications were denied on initial review and reconsideration, an ALJ held a hearing on June 6, 2019. (R. 291.) Plaintiff and vocational expert Warren Haagenson testified. (R. 292.)

Plaintiff testified he was 49 years old, lived alone, was able to drive, wore eyeglasses, and occasionally used a cane. (R. 296.) He testified that his mental health and back pain were the primary reasons he could not work. (R. 298.) According to Plaintiff, his depression affected his sleep, memory, and concentration. (R. 298.) Plaintiff believed he could lift up to 20 pounds, but not constantly. (R. 299.) His eyesight was slowly deteriorating; using a computer caused eye strain; and he could look at his phone for only 10 to 15 minutes before needing to rest his eyes. (R. 300.) Plaintiff testified that his eyesight did not affect his ability to drive, however. (R. 300.) Plaintiff testified that he also had carpal tunnel syndrome but could not have surgery for at least six months due to a heart condition. (R. 300.) His heart condition caused light dizziness and difficulty breathing with walking, especially uphill. (R. 301.) Plaintiff further testified that he spent most days in the

8

common area of his apartment building doing puzzles and drinking coffee. (R. 301–02.) He occasionally visited his brother, who lived in the country, and helped him with chores such as mowing and gardening. (R. 302.) Plaintiff took care of his own personal needs such as feeding himself and dressing, but he sometimes forgot to turn off the stove. (R. 302.) Plaintiff also washed his own laundry, shopped for groceries, and had hobbies of leatherwork and macrame. (R. 303.)

The ALJ asked Mr. Haagenson to consider a hypothetical individual with Plaintiff's characteristics, who could lift or carry up to 10 pounds frequently and 20 pounds occasionally; sit for 8 hours a day with normal breaks; stand or walk about 6 hours in an 8-hour day with normal breaks; never or occasionally climb or balance; tolerate occasional exposure to hazards; tolerate occasional exposure to extreme cold, heat, humidity, or vibration; occasionally view a computer screen, no more than 5 minutes at a time; occasionally perform tasks that require precise near acuity, such as threading a needle; understand, remember, and carry out short and simple instructions; respond appropriately to work pressures and changes in the work setting; and maintain attention and concentration for 2-hour segments. (R. 309–10.) Mr. Haagenson testified that such a person could not perform Plaintiff's past work but could work in light, unskilled jobs like a motel cleaner, hand packager, or collator operator. (R. 310.) If the person could also interact appropriately with coworkers and the public occasionally, the person could perform the same jobs.

The ALJ issued a written decision on June 24, 2019, determining that Plaintiff was not disabled. (R. 11.) Pursuant to the five-step sequential analysis outlined in 20 C.F.R. §§ 404.1520(a) and 416.920(a), the ALJ first determined that Plaintiff had not engaged in

substantial gainful activity since August 23, 2016. (R. 16.) At the second step, the ALJ

found that Plaintiff had severe impairments of "coronary artery disease; degenerative disc

disease of the lumbar spine; obesity; Duane syndrome of the bilateral eyes; [and] major

depressive disorder." (R. 16.) At step three, the ALJ concluded that none of Plaintiff's

impairments, alone or in combination, met or medically equaled the criteria of an

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. 18.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional

capacity ("RFC")[2]

> to perform less than a full range of light work as defined in 20 [C.F.R. §§]
> 404.1567(b) and 416.967(b). The claimant is able to lift and/or carry up to
> ten pounds frequently and twenty pounds occasionally. He can sit throughout
> an eight-hour day with normal breaks. He can stand and/or walk about six
> hours in an eight-hour day with normal breaks. The claimant can never climb
> ladders, ropes or scaffolds. He can occasionally climb stairs or ramps,
> balance . . ., stoop, kneel, crouch or crawl. He can tolerate only occasional
> exposure to work around hazards such as dangerous moving machinery or
> unprotected heights. He can tolerate only occasional exposure to extreme
> cold or heat, humidity, vibration. The claimant can only occasionally view
> [a] computer screen throughout the day and no more than five minutes at a
> time. He can only occasionally perform job tasks that require precise near
> acuity like threading a needle. The claimant is able to understand, remember
> and carry out short, simple instructions. He is able to respond appropriately
> to work pressures in a usual work setting. He is able to respond appropriately
> to changes in a routine work setting. The claimant is able to maintain
> attention and concentration for routine work for two-hour segments.

(R. 20.) As part of the RFC assessment, the ALJ considered Plaintiff's symptoms and his

statements describing those symptoms; objective medical evidence such as clinical and

laboratory findings, tests, and imaging results; medical opinion evidence from state agency

---

[2] RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R.
§§ 404.1545(a)(1); 416.945(a)(1).

medical consultants, Dr. Gahn, and Ms. Larrabee; and Plaintiff's activities of daily living. (R. 21–26.) The Court will discuss the ALJ's consideration of Dr. Gahn's and Ms. Larrabee's opinions in greater detail below.

At step four, the ALJ determined that Plaintiff could not perform his past work. (R. 26.) Thus, the ALJ proceeded to step five, where the ALJ found that Plaintiff could successfully adjust to other work such as a motel cleaner, hand packager, or collator operator. (R. 27.) Consequently, Plaintiff was not disabled. (R. 28.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1.) This made the ALJ's decision the final decision of the Commissioner for the purpose of judicial review.

### C.    Judicial Review

Plaintiff seeks reversal of the Commissioner's final decision and remand for either an award of benefits or further administrative proceedings. The Commissioner opposes Plaintiff's motion and asks that the final decision be affirmed.

## II.    Whether the ALJ Properly Evaluated Opinion Evidence

### A.    Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002)

(citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB and SSI, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

### B.    Dr. Gahn's Medical Opinions

For DIB and SSI applications filed before March 17, 2017, such as Plaintiff's, 20 C.F.R. §§ 404.1527 and 416.927 govern the evaluation of medical opinion evidence. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) . . . ." 20 C.F.R. §§ 404.1527(a)(1); 416.927(a)(1). A "treating source" is an "acceptable medical source"

12

who has provided a claimant with medical treatment or performed an evaluation and who has an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2). Under these regulations, ALJs weigh medical opinions according to several factors: existence, length, nature, and extent of a treatment relationship, existence of an examining relationship and frequency of examination; supportability with medical signs and laboratory findings; consistency with the record as a whole; specialization of the source; and other factors tending to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)–(6); 416.927(c)(1)–(6).

If an ALJ finds that a treating source's opinion on the nature and severity of an impairment "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," the ALJ will give the opinion controlling weight. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). In every case, an ALJ must "give good reasons" for the weight given a treating source's medical opinion. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). Whether a claimant is disabled is an issue reserved for the Commissioner, so a medical source's opinion that a claimant is disabled is inconsequential. 20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1).

The ALJ summarized and considered the medical opinion evidence from Dr. Gahn. (R. 23, 25.) The ALJ explicitly recited in the written decision Dr. Gahn's statements that it was "very difficult" for Plaintiff "to sustain detailed visual tasks at near and far" and that Plaintiff's "productivity would be poor and unreliable even if he could struggle through the disabling eyestrain. Simply functioning day to day is a challenge with his visual disability." (R. 25.) The ALJ gave the opinion "some weight" because it was generally

consistent with Plaintiff's testimony that he could look at a screen for about five minutes before needing to take a break. (R. 25.) The ALJ included in the RFC a limitation to looking at a computer screen no more than five minutes at a time and only occasionally performing tasks that require precise near acuity. (R. 20.)

Plaintiff argues the ALJ did not provide good reasons for giving less than controlling weight to Dr. Gahn's medical opinions. (Pl.'s Mem. at 9.) Plaintiff points out that the ALJ did not address Dr. Gahn's statements that Plaintiff would have trouble sustaining detailed visual tasks for both near and far distances and that Plaintiff's productivity would be poor and unreliable due to "disabling eyestrain." (*Id.* at 12.)

The Commissioner responds with reasons the ALJ never mentioned in the ALJ's evaluation of Dr. Gahn's opinions. (*See* Def.'s Mem. Supp. Mot. Summ. J. at 20–22, Dkt. No. 31; R. 25.) The Commissioner notes that Plaintiff testified that his vision did not affect his ability to drive and that he had good peripheral vision, that Plaintiff used a cell phone, that Plaintiff could perform his past work despite his eye condition, that Plaintiff engaged in activities presumably requiring good eyesight, and that Plaintiff's eyesight did not deteriorate between eye appointments from 2013 through 2018. These would have been fine reasons for the ALJ to give in weighing Dr. Gahn's opinions. But the ALJ did not, and the Court cannot accept the Commissioner's post hoc rationalizations. *See Stafford v. Kijakazi*, No. 4:20-CV-1011-NKL, 2022 WL 358061, at *4 (W.D. Mo. Feb. 7, 2022); *Shanda v. Colvin*, No. 14-CV-1838 (MJD/JSM), 2015 WL 4077511, at *30 (D. Minn. July 6, 2015) (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 87 (1943)) (limiting judicial review of an agency's final decision to the bases given in the decision)). "It is not the role of this

14

Court to speculate on the reasons that might have supported the ALJ's decision or supply a reasoned basis for that decision that the ALJ never gave." *Stacey S. v. Saul*, No. 18-cv-3358 (ADM/TNL), 2020 WL 2441430, at *15 (D. Minn. Jan. 30, 2020), *R. & R. adopted*, 2020 WL 1271163 (D. Minn. Mar. 17, 2020). In *Bonnett v. Kijakazi*, the Eighth Circuit Court of Appeals rejected the Commissioner's argument that an opinion was not consistent with other evidence for the very reason that "the ALJ made no such findings." 859 F. App'x 19, 20 (8th Cir. 2021) (addressing the ALJ's consideration of opinion evidence under the current, post-March 17, 2017 regulation, 20 C.F.R. § 404.1520c; also citing *Chenery*, 318 U.S. at 87). The Court must reject the Commissioner's arguments here for the same reason.

The only reason the ALJ provided for giving "some weight" to Dr. Gahn's opinions is that the opinion was generally consistent with Plaintiff's testimony that he could view a screen for five minutes at a time.[3] Consistency is a reason to find an opinion persuasive, however, not a reason to reduce the weight of an opinion.

The ALJ simply gave no reason to reduce the weight given to Dr. Gahn's opinions. This is especially striking because the ALJ explicitly recounted in the decision Dr. Gahn's statements that Plaintiff would have difficulty with detailed visual tasks at near *and far* distances and that Plaintiff's productivity would be poor and unreliable due to his eyestrain, but the ALJ neither incorporated the limitations into the RFC nor explained why not.

An ALJ's evaluation of medical opinion evidence is not necessarily an onerous burden. But an ALJ must do more than the ALJ did here. Accordingly, the Court

---

[3] The ALJ also noted the "some weight" finding was consistent with the RFC, but an RFC is not one of the factors listed in 20 C.F.R. §§ 404.1527(d)(1) or 416.927(d)(1).

recommends that the Commissioner's decision be reversed and the case remanded to the SSA for proper consideration of Dr. Gahn's medical opinions as required by 20 C.F.R. §§ 404.1527 and 416.927.

### C.    Ms. Larrabee's Opinion

As a social worker, Ms. Larrabee is a "medical source," but not an "acceptable medical source" under §§ 404.1527 and 416.927. Social Security Ruling ("SSR") 06-3p, 2006 WL 2329939, at *2 (SSA Aug. 9, 2006). Opinions from medical sources are evaluated using the same factors as opinions from acceptable medical sources. 20 C.F.R. §§ 404.1527(f)(1); 416.927(f)(1). The ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. §§ 404.1527(f)(2); 416.927(f)(2).

The ALJ gave Ms. Larrabee's opinion little weight. (R. 25.) The ALJ summarized the limitations contained in the Medical Source Statement but found the limitations "generally out of proportion with the record." (R. 25.) The ALJ explained that Plaintiff was "generally able to keep track of and attend his appointments, with no mention of missed appointments"; was able to shop independently, care for his personal needs, and play puzzles and games; and was described as pleasant and cooperative by medical sources. (R. 25–26.) In addition, the ALJ recounted, the record lacked evidence of excessive irritability, sensitivity, or argumentativeness; Plaintiff said he liked spending time with others in the common area of his apartment building; Plaintiff visited his brother; Plaintiff shopped for

16

groceries, washed the dishes, and did laundry; Plaintiff met his ARMHS worker and therapist regularly for two years without difficulty; and Plaintiff read books, although his mind sometimes wandered. (R. 26.)

Plaintiff argues that Ms. Larrabee's opinion should have been given more weight. (Pl.'s Mem. at 15.) Plaintiff points out that Ms. Larrabee was a treating and examining source, treated Plaintiff on a biweekly basis for almost two years, and supported her opinion with a letter describing Plaintiff's diagnoses and symptoms. (*Id.* at 15–16.) Plaintiff also identifies evidence that is consistent with Ms. Larrabee's opinion. (*Id.* at 16–18.) Essentially, through these arguments, Plaintiff is asking the Court to reweigh the evidence and reach a different conclusion. This Court's job, however, "is not to reweigh the evidence, but to ensure that the Commissioner's decision is supported by substantial evidence in the record." *Johnson v. Astrue*, 627 F.3d 316, 319 (8th Cir. 2010).

By finding Ms. Larrabee's opinion "generally out of proportion with the record," the ALJ in effect found that it was inconsistent with the record. That the ALJ did not use the word "'consistency' is not determinative; word choice alone does not warrant reversal." *Atwood v. Kijakazi*, No. 4:20-CV-1394 JAR, 2022 WL 407119, at *5 (E.D. Mo. Feb. 10, 2022) (citing *Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2013) (finding semantics does not warrant reversal when substantial evidence supports the ALJ's decision)). Consistency is one of the factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c), and an ALJ may reduce the weight of an opinion that is inconsistent with other evidence of record. The Court finds that the ALJ's Assigning little weight to Ms. Larrabee's opinion for this reason is supported by substantial evidence in the record. The record documents that Plaintiff

generally kept track of and attended his appointments. His providers described him as pleasant and cooperative. Many medical records did not document excessive irritability, sensitivity, or argumentativeness. Plaintiff enjoyed spending time with other residents in his apartment building and visited his brother. Plaintiff independently shopped for groceries, cared for his personal needs, washed dishes, read books, and did laundry. This evidence is not consistent with the marked and extreme limitations found by Ms. Larrabee.

Other evidence mentioned elsewhere in the ALJ's decision is also inconsistent with Ms. Larrabee's opinion. As the ALJ noted, providers found intact memory, fair judgment, and fair insight at several psychiatric examinations. (R. 18 (citing R. 1201, 1207.) A screening assessment in March 2019 showed intact memory. (R. 23.) At some appointments, Plaintiff showed intact or focused concentration. (R. 19 (citing R. 1170, 1201, 1207, 1215, 1227, 1235, 1239).) Many mental status examinations were relatively normal, documenting cooperative and pleasant behavior, organized and logical thoughts, fair concentration, appropriate affect, average intelligence, intact memory, normal speech, normal insight and judgment, and average intelligence. (R. 24 (citing 603–04, 676, 1170).) Plaintiff played games and puzzles, which demonstrated some ability to concentrate. (R. 19.) Plaintiff also paid bills, counted change, handled a savings account, and used a checkbook, which showed some ability to adapt and manage himself. (R. 20, 24.) State agency medical consultants opined that Plaintiff had no more than moderate limitations caused by mental impairments. (R. 24–25 (citing 347–80, 385–416).)

In sum, the Court concludes that the ALJ did not err in evaluating Ms. Larrabee's opinion.

### III.    The Constitutional Authority of the ALJ

Plaintiff argues that the appointment of former Commissioner Andrew Saul violated the separation-of-powers doctrine because he was removable only for cause and could serve a longer term than the President of the United States. (Pl.'s Mem. at 19.) Thus, according to Plaintiff, the ALJ and Appeals Council members, who derived their authority from Mr. Saul, lacked the constitutional authority to decide Plaintiff's applications. (*Id.*)

Under 42 U.S.C. § 902(a)(3) the Commissioner of Social Security "may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." Plaintiff relies on *Seila Law LLC v. Consumer Finance Protection Bureau*, 140 S. Ct. 2183 (2020), for the proposition that it is unconstitutional for an executive agency to be led by a single director who could serve for a longer term than the President and could be removed only for cause. (Pl.'s Mem. at 19.) In *Seila Law*, the Supreme Court considered a statutory restriction similar to § 902(a)(3) that limited the President's power to remove the Director of the Consumer Financial Protection Bureau ("CFPB"). *Id.* at 2191. The Court held "that the structure of the CFPB violate[d] the separation of powers," but because the removal provision was severable from the statute, the agency could continue to operate. *Id.* at 2192.

The Commissioner acknowledges that § 902(a)(3) violates the separation of powers to the extent the statute limits the President's authority to remove the Commissioner. (Def.'s Mem. Supp. Mot. Summ. J. at 6.) *See also* Office of Legal Counsel, *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 2021 WL 2981542 (SSA July 8, 2021). The Commissioner disagrees, however, that this conclusion

requires setting aside an unfavorable disability determination. (Def.'s Mem. at 6.) Citing *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the Commissioner contends Plaintiff cannot show a nexus between the removal restriction in § 902(a)(3) and the denial of his SSI and DIB claims. (*Id.*)

In *Collins*, the Supreme Court found unconstitutional a for-cause removal restriction in 12 U.S.C. § 4512(b)(2). 141 S. Ct. at 1783. That statute established a single Director of the Federal Housing Finance Agency ("FHFA"), who could be removed before the end of their term only "for cause." 12 U.S.C. § 4512(b)(2). In addressing the relief to be afforded, the Court declined to undo the actions undertaken by the confirmed Directors. "All the officers who headed the [agency] during the time in question were properly *appointed*. Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office." *Collins*, 141 S. Ct. at 1787 (emphases in original). Accordingly, the particular actions at issue that had been taken by the officers were not necessarily void. *Id.* at 1788. The case was remanded for a determination whether the unconstitutional removal restriction had caused any harm. *Id.* at 1789.

Assuming *arguendo* that § 902(a)(3) violates the separation of powers in its *removal* restrictions, "the removal provision is severable." *Shannon R. v. Comm'r of Soc. Sec.*, --- F.3d ----, No. C21-5173-MLP, 2021 WL 5371394, at *8 (W.D. Wash. Nov. 18, 2021), *appeal filed* (Jan. 10, 2022); *cf. Seila Law*, 140 S. Ct. at 2192 (holding removal provision severable from other statutory provisions governing the CFPB). The question framed by *Collins*, then, is whether a constitutional defect existed in the *appointment* of the

Commissioner. *See* 141 S. Ct. at 1787. Plaintiff has not shown any such defect, and the Court finds none existed. *E.g., Shannon R.*, 2021 WL 5371394, at *8 ("[T]he removal provision does not render the Commissioner's appointment invalid, and thus does not automatically void the SSA's actions under the Commissioner."); *Stamm v. Kijakazi*, --- F. Supp. 3d ----, No. 3:20-CV-02273, 2021 WL 6197749, at *6 (M.D. Pa. Dec. 31, 2021). Because Plaintiff has not shown a constitutional defect in the appointment of the Commissioner, the Commissioner therefore had "the authority to carry out the functions of the office." *See Collins*, 141 S. Ct. at 1788.

Finally, the Court considers whether the removal provision caused Plaintiff harm. *Id.* at 1789. Plaintiff argues in her reply that she was deprived of a constitutionally valid hearing, decision, and adjudication from the ALJ and Appeals Council. (Pl.'s Reply at 12, Dkt. No. 38-1.) But those alleged harms were not caused by the *removal* provision. *See E.M. v. Kijakazi*, --- F. Supp. 3d ----, No. 20-CV-02272-JCS, 2022 WL 827645, at *29 (N.D. Cal. Mar. 18, 2022) ("To demonstrate that the unconstitutional provision, 42 U.S.C. § 902(a)(3), inflicted 'compensable harm,' E.M must 'show a link between the denial of his claim for disability benefits and the alleged unconstitutional removal provision.'") (citation omitted). A claimant does "not suffer harm simply because the ALJ's delegation of authority came from the Commissioner, whose appointment was 'constitutionally defective.'" *Id.*

Accordingly, this Court agrees with the numerous other courts that have addressed similar challenges to the constitutional authority of the Commissioner and concluded that claimants are not entitled to remand or other relief. *E.g., Lisa D. v. Kijakazi*, No. 8:21-CV-

294, 2022 WL 952778, at *6–7 (D. Neb. Mar. 30, 2022); *B. Z. v. Kijakazi,* No. 21-CV-01087-REB, 2022 WL 179335, at *3–4 (D. Colo. Jan. 20, 2022); *Schwechel v. Kijakazi*, No. 20-CV-700-WMC, 2022 WL 135022, at *5 (W.D. Wis. Jan. 14, 2022); *Harriman v. Comm'r of Soc. Sec.*, No. 2:20-CV-6548, 2022 WL 109347, at *6–7 (S.D. Ohio Jan. 12, 2022); *Ramos v. Comm'r of Soc. Sec.*, No. 1:20-CV-01606-EPG, 2022 WL 105108, at *3–4 (E.D. Cal. Jan. 11, 2022); *Mor v. Kijakazi*, No. CV 21-1730 (JMV), 2022 WL 73510, at *3–5 (D.N.J. Jan. 7, 2022); *Campbell v. Comm'r of Soc. Sec. Admin.*, No. CV-20-02048-PHX-JAT, 2022 WL 34677, at *3–4 (D. Ariz. Jan. 4, 2022).

## IV.    Recommendation

Accordingly, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.    Plaintiff's Motion for Summary Judgment (Dkt. No. 24) be **GRANTED IN PART AND DENIED IN PART**;

2.    Defendant's Motion for Summary Judgment (Dkt. No. 30) be **GRANTED IN PART AND DENIED IN PART**;

3.    The Commissioner's decision be **REVERSED**;

4.    The matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for consideration of Dr. Gahn's medical opinions under 20 C.F.R. §§ 404.1527 and 416.927; and

5.   **JUDGMENT BE ENTERED ACCORDINGLY**.


Date: April 19, 2022                              *s/ John F. Docherty*
                                                  JOHN F. DOCHERTY
                                                  United States Magistrate Judge


## NOTICE

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and therefore is not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to D. Minn. LR 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation within fourteen days. A party may respond to objections within fourteen days of being served a copy. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).